BENJAMIN RACKLEY & al. vs. MOSES SPRAGUE & al.

17    281
85    530
17    281
101    207
101    210

The grant of a saw-mill and grist-mill carries also the use of the head of water necessary to their enjoyment, with all incidents and appurtenances, as far as the right to convey to this extent existed in the grantor.

If such grant cannot be beneficially enjoyed without causing the water to flow back upon other lands of the grantor, a right to do this, passed to the extent to which it had been flowed before the grant, by which all privies in estate under the grantor would be bound.

A grant of a saw-mill and grist mill, " with the privilege of raising a full head of water to the usual height, from the middle of *November* to the middle of *May*, so far as it respects lands of the grantor, and at other seasons as may be hereafter agreed," does not restrict the grantee to the use of the head of water during that time only; but is merely a failure to fix exactly by compact to what extent the grantee might flow for the remainder of the year, and leaves that matter as an incident to the grant, to be determined by legal adjudication.

EXCEPTIONS from the District Court, for the Middle District REDINGTON J. presiding.

Complaint upon the statute for flowing the land of the complainants.

The respondents, by brief statement, say, that they derived title to the mill and dam, by sundry mesne conveyances, from *Josiah Little* who then was seized of the land described in the complaint, and that by conveyances and license from said *Little* they have the right and privilege of maintaining their dam as high as the top of the then dam, from *Oct.* 1, to *June* 1, and as high as the top of the waste way of the first or original dam, from *June* 1, to *Oct.* 1, of each year, and so to flow the lands without the payment of damages. A deed from *Josiah Little*, to *William Sprague*, father of the demandants, dated *July* 11, 1818, conveyed the remaining part of a lot described, " not heretofore sold and conveyed by said *Josiah*, or by his late father, *Moses Little* deceased, to said *Sprague*," and " also one undivided moiety or half part of a saw-mill and grist-mill in common with said *Sprague*, together with the undivided half of the privilege for the same, *with the privilege of raising a full head of water to the usual height* from the middle of *November* to the middle of *May* so far as it respects lands of said *Little, and at other seasons as may be hereafter agreed.*"    At this

time, *Josiah Little* owned the land alleged in the complaint to have sustained damage by the flowing. On the back of the same deed was written —— "It is agreed that the water may be kept as high as the top of the dam from the first day of *October* to the first day of *June* — and from the first day of *June* to the first day of *Oct.* to be drawn as low as the top of the wasteway of the first or original dam. It is understood that the privilege is on the land formerly conveyed to said *Sprague. Josiah Little,* by his Agent, *Edward Little.*" This was sealed and witnessed, but had no date, and was not acknowledged or recorded. On the back thereof was entered, "*Kennebec ss.* Rec'd this deed with the agreement above written, *November* 30, 1819, and entered the same with the records of deeds for said county, book 34, p. 202. *John Hovey,* Reg'r." This deed was offered in evidence at the trial by the respondents, having the writing on the back thereof. The complainants called upon the respondents to show the authority of *Edward Little* as the agent of *Josiah Little* to make the writing. The respondents called *Edward Little,* and proposed to prove by him his authority. The Judge rejected the witness. It was insisted on the part of the respondents, that the writing on the back was a part of the deed. The Judge ruled, "that even if the authority of *Edward Little* to execute the paper on the back of the deed had been proved, the paper would not constitute such evidence as would maintain against these complainants the right set up by the respondents in their brief statement." The verdict being for the complainants, the respondents excepted "to the rejection of said witness, and the ruling of the Judge in reference to said writing on the back of said deed."

*Emmons,* for the respondents, in his argument on the first point, contended : ——

1. *Edward Little* was agent of *Josiah Little,* or represented himself to be such and acted in that capacity, and as such was liable to be called, and might lawfully be examined as a witness, although he was interested. *Phillips* v. *Bridge,* 11 *Mass. R.* 246 ; 2 *Stark. Ev.* 767, and cases cited ; 1 *Johns. Cases,* 270, 408 ; 2 *Johns. Cases,* 60 ; 3 *Johns. Cases,* 47 ; 5 *Johns. R.* 256 ; 1 *Leach C. C.* 314 ; *Bent* v. *Baker,* referred to in 3 *T. R.* 27 ; *Smith's collection of leading cases,* 30 ; 2 *H. Bl.* 590 ; 4 *T.*

*R.* 590; *Peake,* 129; 10 *B. & C.* 858; 8 *B & C.* 408; 3 *Campb.* 317.

2. His interest was balanced, and therefore he was admissible. 7 *T. R.* 480; 1 *Campb.* 408; 5 *M. & S.* 71.

3. The ruling on this point was incorrect, inasmuch as the witness was rejected generally, when he was competent to testify as to certain things. *Smith* v. *Carrington,* 2 *Peters' Cond. R.* 26.

4. The witness was not interested in the event of the suit, and therefore he ought to have been permitted to testify. *Evans* v. *Eaton,* 5 *Peters' Cond. R.* 311.

On the second point, it was urged, that the instruction was wrong. It is manifest that *Little* conveys in the body and face of the deed the privilege of raising a full head of water, at other seasons than from middle of *November* to middle of *May.* All that remained was to agree as to the other seasons, and the height of the water. When the agreement was made, the effect of it was simply to limit the boundary of time, and height of raising the water. Upon the execution of it, that was made certain and definite which was not so before. *Waterman* v. *Johnson,* 13 *Pick.* 267; *Clapp* v. *Smith,* 16 *Pick.* 249; *Smith* v. *Crooker,* 5 *Mass. R.* 540; 2 *Ch. R.* 187; 1 *Stark. R.* 131; 2 *Wheat.* 196; 2 *Peters' Cond. R.* 408; 3 *Peters' Cond. R.* 495; 13 *Johns. R.* 212; 4 *Serg. & R.* 241; *Wheelock* v. *Thayer,* 16 *Pick.* 68. The privilege, the substantial right and interest, the easement was conveyed in and by the body of the deed, and the agreement written upon the back of the deed was merely a description or specification of what was conveyed in the deed, and was of necessity as much a part of it, as if inserted upon the face of the deed. 5 *Wheat.* 293; *Coke Litt.* 45 *b.* The agreement was carried into effect by the grantee of *Josiah Little,* and those claiming under him, and the privilege, purported to be conveyed, was used, exercised and enjoyed by them, and this with the knowledge of *Josiah Little,* and of the complainants. This amounted to a ratification of the acts of *Edward Little* under a full knowledge of the claim of the respondents. *Copeland* v. *Mercantile Ins. Co.,* 6 *Pick.* 203; *First Par. in Sutton* v. *Cole,* 3 *Pick.* 232; 1 *Caines,* 527; *Lent* v. *Padelford,* 10 *Mass. R.* 230; *Erick* v. *Johnson,*

6 *Mass. R.* 193 ; *Clement* v. *Jones,* 12 *Mass. R.* 60 ; *Frothingham* v. *Haley,* 3 *Mass. R.* 70.

*Wells,* for the complainants, contended in his argument : —

1. *Edward Little* was not a competent witness to prove his authority. *Hewitt* v. *Lovering,* 3 *Fairf.* 201. This was an authority to make a deed, for the agreement is under seal and witnessed. Parol testimony is not admissible for this purpose. *Kimball* v. *Morrill,* 4 *Greenl.* 368 ; *Ken. Pur.* v. *Call,* 1 *Mass. R.* 483. And as real estate can only be conveyed by deed, the authority of an agent to make such conveyance must be by deed. 2 *Kent's Com.* 613 ; *Banorgee* v. *Hovey,* 5 *Mass. R.* 11 ; *Stetson* v. *Patten,* 2 *Greenl.* 358. And the witness is not permitted to prove his own authority. 1 *Yeates,* 200 ; 2 *Yeates,* 38 ; 2 *Dallas,* 246.

2. The ruling of the Judge was also correct, that if the authority of *Edward Little* to execute it had been proved, the paper would not constitute such evidence as would maintain against these complainants the right set up by the respondents. The grantee had no right to raise a full head of water at any other time than is mentioned in the deed, between the middle of *November* and the middle of *May.* If " other seasons " *were to be* agreed upon, the other seasons were not *then* agreed upon. The phrase is used to limit the meaning of the previous expressions, and the language implies, that if the grantee desires any greater privilege than he has obtained, he must receive them under a new agreement. It is said, that the agreement is a part of the original deed. This cannot be true. There is no evidence to prove when the paper was made, but the papers show that the agreement was not made until after the deed. The deed was by *Josiah Little ;* the agreement by *Edward Little ;* the witnesses were different ; the agreement states, that the " privilege is on lands *formerly* conveyed to said *Sprague ;*" and no other deed but this is shown from the grantor, *Josiah Little,* to *Sprague.* It therefore must be considered, that the agreement made by *Edward Little* was after the deed. This indorsement being for the benefit of the grantor, and prejudicial to the grantee, cannot be allowed to operate upon the principle adopted in *Stocking* v. *Fairfield,* 5 *Pick.* 181, where a condition

was indorsed on an absolute deed whereby it was rendered a mortgage.

It is said, that if *Edward Little* had no authority to make the agreement at the time when it was made, it was ratified by the after acts. If such ratification had been proved, it would have been but a parol ratification, and like a parol authority, is not binding. *Stetson* v. *Patten, 2 Greenl.* 358.

The opinion of the Court was drawn up by

Weston C. J. — In the decision of this cause it is important to determine what right the grantee of *Josiah Little* derived from his deed, independent of the agreement, upon which the respondents rely. The grant of the undivided half of the saw-mill and grist-mill, carried also the use of the head of water, necessary to their enjoyment, with all incidents and appurtenances, as far as the right to convey to this extent existed in the grantor. If then this grant could not be beneficially enjoyed, without causing the water to flow back upon other lands of the grantor, a right to do this passed to the extent to which it had been flowed before the grant, by which all privies in estate, under the grantor, would be bound. This principle was decided in *Hathorne* v. *Stinson et als.,* 1 *Fairf.* 224. The doctrine is there very fully illustrated and the authorities referred to, upon which it rests, by *Parris J.* who delivered the opinion of the court.

The deed under consideration expressly granted the privilege, which as incident and necessary to the subject matter of the grant, became presently operative, upon the execution of the deed. That instrument goes on further to fix and limit the enjoyment of the privilege, from the middle of *November* to the middle of *May.* During this part of the year the head of water was to be raised to its usual height. This appears to be nothing more than would have been implied, without such specification. What follows, namely, " and at other seasons, as may be hereafter agreed," provides for a subsequent limitation of the grant. It refers manifestly to the exact elevation of the head of water.

The right of enjoyment was not made to depend upon the subsequent agreement, but that agreement was to limit, when made, the extent of the water power for that portion of the year, not

precisely determined by the deed.　Assuming that the parties had neglected to enter into any such agreement, or that the grantor had refused to do so, it does not follow that the grantee is therefore to be deprived, for half the year, of the use of his privilege.　The result would only be, a failure to fix exactly, by compact, to what extent the grantee might flow, and to leave that matter, as an incident to the grant, to be determined by legal adjudication.　For any thing which appears, the grantor had quite as much to gain, by the execution of the contemplated agreement as the grantee, considering the season of the year, to which it referred, its design may be presumed to have been rather a limitation, than an extension, of the water power conveyed.　It appears to us therefore, that if there were no agreement the respondents are still entitled to the privilege, as it had been before used.

The exceptions are based upon the rejection of *Edward Little*, as a witness, and the instruction of the Judge, that the defence was not sustained by the written agreement, executed by him claiming to act in behalf of *Josiah Little*, indorsed on the deed before referred to.　Although thus apparently limited, as this deed is, the case adduced by the respondents, for their justification, the instruction was too narrow, and had the effect to defeat a defence, resting upon the construction of the deed, aside from the agreement.　As this may prove decisive upon the merits, in favor of the respondents, the exceptions are sustained, the verdict set aside and a new trial granted.